Good morning and thank you, Your Honors. Stanley Patikowsky for Appellant Metamorfoza. The key fact in this appeal is that Metamorfoza has asserted its registered composite trademark against Big Funny's use of a composite trademark in commerce. Counsel, let me tell you my problem with the case so you can educate me out of it. Here's my problem. There's a distinctive stylized M and it's certainly registrable and it was registered. And I think there's precedent treating it as first use, even though your competitor opened their store first or their museum first. That is all fine. But what I've been thinking of is consumer confusion. And the way most consumers would know about the museum isn't by looking at the stylized M. It's by talking to a friend and saying, hey, I'm going with my kids to Los Angeles, you know, if anything it would be fun to do there. And the friend says, oh, yeah, go to the Museum of Illusions. And I'm thinking of TripAdvisor where people look for something fun to do. And it says go to Museum of Illusions. The way it would be referred to in the ways that would direct consumers to it wouldn't be the picture of the M. It would be the words. And the words are disclaimed. So if, as a practical matter, your consumer base isn't looking at the picture and is just drawn by the words and the words are not registered or claimed, how do you get a claim? Your Honor, we get a claim because under Trondley and Iqbal, we look at the allegations of the complaint. Your theory, Your Honor, is one that can be tested in discovery to determine, as this Court has held, the answer to the relevant inquiry. The first thing I would look for were some affidavits by consumers who said they were confused, but they're not there. Your Honor, those are not part of the allegations of the complaint, but we're only at the 12B6 stage. And so what we do at the 12B6 stage is that we assume that the allegations of metamorphosis complaint are true. Was there an allegation that consumers were confused? Your Honor, there aren't any allegations in the Second Amendment complaint of actual consumer confusion. There are allegations that support the likelihood of consumer confusion under several sleep-crap factors, including similarity of marks, similarity of goods and services, strength of marks. The stylized M and the big funny marks, they don't look very similar. Your Honor, metamorphosis position is that there are similarities between those marks, and this Court has held in Rodeo Collection 812F2nd Act 1219, that you emphasize similarities more than dissimilarities when you're analyzing two marks, and that's especially appropriate at the pleading stage. We're all being... So can I stop you there? Because I think that's exactly right. Yes, Your Honor. When I talk about the pleading stage, we're at 12B6. Yes. And there are cases where, although, of course, we assume allegations to be true, but there are cases where, at the 12B6 level, the district court has leeway to dismiss the claim. Correct. So this is not plausible. And I think that's what this district court did, although I had to go over this order several times to really work my way through it. It seemed to me initially that I thought that the court reached the sleep-crap factors and was really talking about confusion, but I'm not so sure it ever reached them, too. I think it is uncontested that it's a composite mark that's your claim, and that requires both components. But boiled down, it seemed to me what the district court was really saying is that the only thing you're really alleging caused confusion is the precise phrase that is disclaimed, and that you can't do. Do you want to speak to that? Yes, Your Honor. The district court's view on that is a misunderstanding of metamorphosis allegations. And Excerpts of Record 32-33, paragraph 40, gives the clearest statement of what metamorphosis is alleging. We know from this court's precedent in sleeper lounge that the disclaimed material forming part of the registered mark cannot be ignored in the likelihood of confusion analysis. So what you must examine... I think the district court knew that. Is it your position that the district court misunderstood that? Your Honor, the district court misunderstood principally the nature of metamorphosis allegations. There are correct statements of the law in the district court's decision that if you were to correctly match up this court's precedent in sleeper lounge with metamorphosis actual allegations, what you would say is that we looked at paragraph 40. We look at the two infringing composite marks, which have both design and textual elements together. And we ask, when you look at those composite marks as a whole, not ignoring anything, not expunging the word Museum of Illusions, but including the words Museum of Illusions with the other stylized geometric solids and figures, is there a plausible claim of likelihood of confusion? I'm looking at those marks right now, and I'm looking at them holistically. And I don't see it. I just don't understand why anyone would confuse anything, except when I see Museum of Illusions, I would think a consumer would think, even though it looks different because it's a different font and color and all that kind of thing, it must be the same outfit because it's called Museum of Illusions. But since that's disclaimed, I don't see why looking at the mark as a whole is confusing. I'm looking at this de novo because it's a 12B6. We're obligated to look at it de novo, so we can't defer. But even looking at it de novo, I just don't understand why, without the text that says Museum of Illusions or even looking at the text together with the mark, anything but the words would cause confusion. Your Honor, first of all, that is a factual issue, inappropriate for disposition on 12B6. Second, Your Honor, this Court has held that you must – You have a plausibility barrier. Yes, Your Honor. There's still, after Iqbal and Twombly, a 12B6 dismissal. Yes, Your Honor. And this Court in Brookfield Communications said if you have a case where you have Pepsi and Coke, those marks are plainly entirely dissimilar. And in that type of situation, you simply may not have any likelihood of confusion without looking at the other factors. What Pepsi and Coke did is they took words that were not in common use, as people often do for trademarks, so they can register the words. I mean, I can't think of anything that would be called a Pepsi except for the soft drink. I mean, Coke may be a particular type of coal or nowadays cocaine, but – Your Honor, here we have these two stylized figures. They're both using geometric solids to form the letter M, as well as other letters in Big Funny's composite mark. And they're playing on illusions that create a perception of depth that make you wonder what is actually forming the word. And so there are similarities at that level. It's not like Coke and Pepsi. And, Your Honor, also to your point, this Court later on – There are some things where you're shocked by looking at the appearance. Like we had another case in our Court called POM Wonderful. The POM bottle, the bottle that you buy this pomegranate drink in, it was a really unusual bottle. And if you were at the grocery store, you'd never mix it up with a bottle that didn't have the weird shape. But after going to a museum, why would you even see the stylized M? Your Honor, we have alleged other sleek craft factors that this Court has held must be considered along with whatever level of similarity or dissimilarity of the marks this Court may find. And that's why the Jada Toys v. Mattel case is important. Because Jada Toys, this Court looked at the Brookfield case where the Coke-Pepsi example came from and said, let's not carry that too far. Sure, when marks are very dissimilar, it may be true that they only very rarely present significant likelihood of confusion, but we still need to look at the other sleek craft factors. And we cannot do what the District Court did here and dispose of a case, especially at the 12 v. 6 stage, based only on the District Court's own factual finding as to whether consumers are likely to be confused by these two marks. It was not for the District Court to say that, as a matter of law, consumers could not plausibly perceive any similarity. Explain, not just generally, but specifically in this case, how the process of consumer confusion would work. I mean, I'm really sympathetic. It looks like you've got two museum of illusions companies. They're totally different companies, different museums, and people are really likely to get confused about which one they mean to go to. But I just can't see why, except for the disclaimed words. So educate me more. Where are people going to see the marks, and how are the marks similar enough to cause confusion? Yes, Your Honor. Constituting the complaint's factual allegations, liberally consumers will encounter both these marks, for example, through the same social media channels, Facebook and Instagram. When they encounter Big Funny's mark, they will see the words, Museum of Illusions, which, again, must be considered as part. Yes? I'm trying to follow your argument. Yes, Your Honor. Just tell me the paragraph. Yes, so paragraph 40, excerpts of record 32 and 33. Thanks. And, Your Honor, so what we see there is, first of all, this is only the beginning of how consumers are going to encounter these marks in the marketplace. We don't analyze them just side by side. We don't dissect them. But even starting here, you have consumers encountering not just the words, Museum of Illusions, but the words, Museum of Illusions, in the context of these stylized geometric solids. You keep saying stylized geometric solids. What do you mean by that? Again, stylized and geometric solids. Yes, Your Honor. When you look at Metamorphose's logo, what you see is there are lines that are drawn to look like blocks, almost Tetris-like blocks, that then form the letter M. And it's obviously two-dimensional, but it creates the illusion of depth between the different parts of the mark. That's what I kind of thought you might mean when I read your, well, mostly because when I look at the stylized M for the other mark, it's clearly trying to give the illusion of being three-dimensional. So is that the thing that's different, I mean similar, that there's a different font? Surely it's a different font, but that it is a font that conveys the impression of an illusion itself, a three-dimensional illusion. That's right. That is a major part of the similarity, in addition to the fact that when you look at Big Funny's Museum of Illusions mark, just as with Plainness mark, where they didn't take a pen and create an M in a straight line, you have different geometric solids that are not the words themselves, but they are placed in a way to create the illusion of the words such that it's actually, looking at the M in Museum, it's actually the blank space that constitutes the M and not so much the dark space, which is purple in the color version, that your eyes are most drawn to. And, Your Honor, you can imagine consumers in the marketplace. And, again, the key here is you have to consider the composite mark as a whole. What you're saying is that even though the words aren't copyrighted, anyone who uses a font that gives an impression of shading or three dimensions or something is infringing. No, Your Honor, that's not what we're saying. What we're saying is that in the context of this particular case, and given all the other sleep craft factors, when you look at the way that Big Funny is using the composite mark in the marketplace, which you also see on, in terms of record, pages 34, 35. I'm looking at 33, 33, 37, 35. That's what I've just been looking at. Yes. I'm trying to see what the similarity is. So, Your Honor, the words Museum of Illusions are part of the similarity that must be considered under this court's decision in Sleeper Lounge. The only way the district court arrived at the decision it did was to ignore the disclaimed words in the similarity analysis. It's something a little bit different. I think what he decided is really the only similarity is the words, and those have been disclaimed. And, Your Honor, that was not an appropriate mode of analysis under Sleeper Lounge. Because Sleeper Lounge says, and I quote, disclaimed material forming part of a registered trademark cannot be ignored. It is still part of the composite mark, which must be considered in its entirety. And I'd like to reserve the rest of my time for rebuttals, Your Honor. Your argument basically is that the two M's, the two stylized M's, are so similar that customers might be confused by them. Is that one way to look at it? No, Your Honor, that's only one part of the argument, because our allegations of infringement include the words Museum of Illusions. But there's no similarity between Museum, any of the stylization between those words. It's just the M's that you are suggesting are stylized. But it's also suggesting that the, if I might, that the two M's themselves are illusions. Yes, and we, and Your Honor, to the point of whether it's just the M, it is not just the M, and part of the reason why we know that is because when the trademark office was presented with Big Funny's application to register its marks, we see on excerpts of record pages 67 to 69, and 94 to 96, that the M in Museum was actually not stylized. Only illusions were stylized, and yet the trademark office said, I'm refusing registration because there's a likelihood of confusion with the very registration metamorphose that is asserting on its composite mark. In this case, if the trademark office thought that, that is further evidence that the district court erred in finding our claims implausible. Thank you, Your Honors. For planning purposes, we'll put two minutes on the clock when you come back. Thank you. Because we took you over, correct? What about this theory that didn't dawn on me until just now? If the similarity is that the M's themselves are illusions. The similarity has to be one where it would create confusion, Your Honor. Right. Do you think that he ever got to sleep craft factors? The thing is that that was never presented to the court, Your Honor. The court assessed what was in front of it, and what was in front of it was the fact that— Is that a no? It was never asked to by the— That's a no. It's a no, Your Honor. So I'm not trying to give you a hard time, but I think the ruling is a little bit, maybe inevitably, a little bit unclear on that point, because he does say the only thing that could create confusion is, and I think that's because, again, I'm unpacking, and I'm doing this for both of you so you can tell me what I'm missing. Sure. He's taken the allegations as true, but there are times where claims are dismissed if OB-6 because a court steps back and says this is not possible. I think that's essentially what he's done. That's what he has done, Your Honor, with respect to the allegation, that there was something more than the disclaimer of subject matter. The allegation was there, but the court looked at the facts supporting that allegation, and what facts are important is looking at, for example, the judgment of the order at ER-7, the comparison of the marks, looking at the recitation of geometric solids with green coloring, and the Museum of Illusions mark, the court looked at that allegation. It's that that allegation, that those two marks are similar, is not plausible when you look at this. And what's telling, Your Honor, is that this comparison appears nowhere in the appellant's brief because the plausibility is belied by the fact that these two look nothing alike. And under DENA, what the court was looking at in terms of plausibility was that under DENA, the Federal Circuit said when you have a mark that's a composite mark that's formed by a disclaimed and a non-disclaimed portion, there has to be something more when it comes to the comparison, something more than just a disclaimed portion. And here, all that Museum of Illusions, the senior user of this mark, all they have done is use the words Museum of Illusions. There is no something more with respect to the geometric, the design that's there. It doesn't appear anywhere. You have a strong argument here, but it's troubling because if it weren't for the waiver of the words themselves, this would be just awfully confusing to consumers, the way people would ordinarily consume information and obtain information about museums. Two museums with the same name. And I think, Your Honor, in a situation like that, when you have a descriptive mark like Museum of Illusions, the tie would go to the first person who got onto the mark. As I remember, there's some technical stuff that says if they're going through the procedure to register, they're treated as the first user even though they're not, even though they don't actually have a museum open. Right. When it comes to a mark, we don't have that here, Your Honor. So I can kind of go through what happened was that we used first in January of 2018 as in the pleadings. And then in September of 2018 is the first time that the defendant used the mark. But when they tried to register the design, they just registered the design, and the Museum of Illusions was disclaimed because the patent office said you can't have that. It's a descriptive term. So they disclaimed it.  I mean, you know about their registration, and you don't do anything different, like Museum of Optical Illusions or Museum of some misspell or maybe misspell illusions. And there's history there, Your Honor, with respect to these museums. Both companies started overseas. Companies do that sort of thing all the time, like they'll spell Y-L-Y-T instead of L-I-G-H-T just so they can have a unique spelling for the registration purposes. Right. But when it came to the Museum of Illusions, the Big Funny was the first one they used it here. So when it came to the second cover, they could have changed it. But with respect to the use in the U.S., we were first. And with respect to use overseas, it's irrelevant. But if the facts were to bear out, I'm not sure who was first overseas because this work was being used in other countries for years. But what's important here, Your Honor, is that what Metamorphose is trying to do is trying to stop the use of the name the way that Judge Kleinfeld is pointing out. So I'd like to start with the central district's holding before I go into the history of the case. The central district found that Metamorphose's claim was implausible. That's why it dismissed it without leave to amend. The court found that Metamorphose sued the senior user. They were the ones who used it first. And the only claim to priority was on the intent-to-use registration that had been designed. It's a design with a composite mark with a design. And the Museum of Illusions disclaimed it. But under DENA, the Federal Circuit made clear that the registration disclaimed the words Museum of Illusions. And that entitles Big Funny to use the disclaimed words, and I quote, without legal harassment when it comes to a descriptive word that's been disclaimed. Anyone can use it without legal harassment, even a later cover. But here, we're the first cover. Now, Metamorphose argues that the central district incorrectly disregarded the disclaimed portion of the trademark registration. But that's not what the court did. The district court held that Metamorphose fails to identify any part of Defendant's Museum of Illusions logo other than the words themselves that are confusingly similar. And the court recognized it, said that it cited to DENA. McCarthy's another precedent said that Metamorphose has to assert its design mark there. It must be a plausible allegation that the defendant, quote, used something more of its MMOI design mark than the disclaimed words. The district court expressly recognized that Metamorphose was alleging to something more. It said, yeah, it's alleging to something more. But it held the fact that Metamorphose had asserted did not make its allegations plausible looking at the comparison. Now, Metamorphose, and let me quote the district court. Metamorphose, however, does not plausibly allege any similarities between the parties' marks other than the disclaimed words Museum of Illusions. And under DENA, the analysis ends there. But Metamorphose never explains to the court what it believed the legal effect of a disclaimer to be. So why do we have a disclaimer? To the contrary, Metamorphose incorrectly asserts a disclaimer in a registration has no legal effect. On the issue of likelihood of confusion, that's document 16 at page 30 of the opening brief. But the appellant would have this court make new law and bar the public from using nothing but the disclaimed matter in a trademark application registration. But the purpose of a disclaimer, it's clear. And in DENA, the Federal Circuit said it pretty succinctly. It said the Lanham Act, and some of those things, prevents an applicant from claiming exclusive rights to disclaimed portions apart from composite marks. The applicant's competitors in the same trade must remain free to use descriptive terms without legal harassment. By encouraging definition of the rights claimed in a composite mark, the act discourages unnecessary litigation. And that's DENA at 1560. But here, Metamorphose has actually done more. It's actually asserted the mark Museum of Illusions against the party that used that descriptive term first. Now, Metamorphose knew that that mark was descriptive. Because in 2019, this is after Big Funny used it, it went to the patent office and said, hey, I'd like to register Museum of Illusions as a word mark, but I'd like to do it with a supplemental registration. Which is an acknowledgment that it's a descriptive mark, that it has no inherent distinctiveness that gives it rights to that mark. But it's undisputed that Big Funny had priority over that later filed registration and over Metamorphose's first use because we used it in January of 2018. They used it in September 2018, and they registered the Museum of Illusions word mark on the supplemental registration in 2019. But unlike DENA, where the Federal Circuit explicitly warned against harassing a later-in-time competitor, Metamorphose is harassing the senior user even after it recognized that the Museum of Illusions word mark was descriptive when it went to the supplemental registration. Now, talking about the something more, we keep talking about the something more, but Metamorphose's allegation that Big Funny's Museum of Illusions word mark infringes something more is illusory, it's wholly illusory. It points to the allegations that, this is an allegation that it points to, and it's ER 32 at paragraph 40. It says, defendants selected a highly similar stylized logo to the plaintiff using brightly colored geometric solids and geometric figures to form letters. Now, those are the words, but this is the facts that substantiate that allegation. There's no similarity between the only design portion of the mark and any design that's in Big Funny's mark. Now, what's actually funny is- Excuse me. Yes, ma'am. What he's just arguing today, because I have not understood what this means, you know, highly stylized solids, what does this mean? Yes, ma'am. And what he's explained today is that part of the similarity is that the M is not the font, it's that the white space forms the M, so that there, and you've heard what he's just described about the three-dimensional nature, so that the M itself is an illusion. What about that? First of all, if someone has to explain to me why they're similar to the point where I can't see it when I first look at it, nor could I for until the moment that I walked in, I still don't. But if someone needs to explain to me- What can you not see? I can't see similarity between the design and the way the font is designed. I can certainly see that these are both illusions. The M's are illusions. I think that's the point that I heard today that I didn't see in the briefing, and I'm not trying to belabor the point or require that you use all of the time remaining on the clock, for that matter, but I'm just wondering about is that something that should give us pause? I don't think so, Your Honor, because I don't think there's similarity when it comes to just a visual impression from the design, which is where the similarity comes from. This is not something that sounds the same. This is just sight. We're talking about a design, Mark. It's just visual impression that matters. And the visual impression here is not the same. The M is an illusion. The M is an illusion. But without the Museum of Illusions, Mark, there is no something more. I don't think there's anything more that's similar about this geometric design to the way the Museum of Illusions is written, Your Honor. It looks to me like Jada Toys' strength to distinguish prior authority, and we have to follow Jada Toys as well as prior authority, and it looks like under Jada Toys we may have to look at this de novo using the sleek graph factors. And those, there's some that go one way, some the other. Maybe you could say strength of the mark, not so much. Proximity of the goods, yes, there is proximity in the market. Similarity of the marks, not so much. Evidence of actual confusion, none pleaded. Marketing channels used, probably identical. Type of goods and degree of care likely to be exercised by the purchaser, probably not much care to be exercised. Defendants intent in selecting the mark, no indication of a wrongful intent by anyone. Likelihood of expansion, well, yeah, they may build competing museums in other cities. I don't know if that's enough to say you have to go beyond the 12B6 or not, and you think clearly you don't, then tell me why not. That's a great point, Your Honor. So, first of all, Metamorphosa, with these factual allegations, didn't present them to the district court to say somehow these other allegations make similarity plausible. But even if it had, it'd be unavailable. The arguments are unavailable because, first, when it comes to the similarity of the goods, the similarity of the goods isn't going to make the designs more or less similar. First of all, Metamorphosa didn't argue that to the court. And second of all, when it comes to... Well, they're highly similar. I mean, they're both museums of optical illusions. Right. So, when it comes to museum of optical illusions, the fact that two different museums of optical illusions may write their names in ways that might be 3D illusions by itself isn't going to make that similar. Let me just make sure that I'm understanding where you're going with your outline there. Are you suggesting we would engage in the sleek craft analysis? I'm not saying that we should engage in the sleek craft analysis. I'm saying that if notwithstanding data, which says that if you don't find something more, the analysis ends there, and there needs to be sleek craft analysis looking at the factors that were presented by Metamorphosa in this case, it would be unavailable. There would be no reason to keep this back to the district court. The similarity of the goods wouldn't help them. When it comes to distinctiveness of the mark, if anything, that goes away from similarity because if the mark is distinctive, then it would be recognized on its own, not with a marked museum of illusions that's just written in sort of discontinued letters. Now, the interesting thing is that when it comes to the intent factor, this case was first in New York, and the New York court dismissed it, and they actually argued intent to the court in New York, and this is what the New York court said. We've said that we've read that repeatedly, but can I stop you there? Because you are making a different argument in New York, so this strikes me as a stretch for you. I'm not going to prevent you from reading this to me, but it's all in the context of a different argument presented in New York, so I'm not sure how much mileage you can have with it. You're right, because their initial argument in New York was that they get to use the name, and we don't, even though we were the senior user. Then they came up with these intent issues, but it's the same intent things that they're using. But more important than anything else, how can there be malintent when Big Funny is the senior user of the mark? I understand that they have a design registration, but there's no misappropriation of the design. How can intent all of a sudden make the appropriation of the design more powerful or somehow lead to a different analysis? It can't, and it doesn't, Your Honor. Actually, we do have the cross appeal on the fees as well. I do want to get into that. So with respect to the fees issue, Your Honor, we're talking here about the thumb limit in the awardability of attorney's fees. I can't remember what they call them, exceptional cases or extraordinary cases, some adjective like that. So here we operate under the octane fitness standard from the Supreme Court, which is the exceptional case standard. It's the same words used for patent infringement. Why do you think this is one of those cases? We think this is one of those cases because it's a repeated and unrelenting attempt through a shifting standards approach to try to harass the citizens. So you can see this harassment. I mean, they registered first, and a competitor opens up calling its museum the same thing. And the likelihood of confusion by consumers seems high. I can't see it as harassment. I mean, it may be mistaken. It may lack merit because of the waiver of the words, but harassment when it looks like a lot of people who mean to pay their $8 admission charge or whatever it is to their museum is instead paying the $8 to the other one. I can't see it as harassment. So here's the issue, Your Honor. So with respect to the peace motion that Judge Walter heard, that motion, if you look at its face, it was limited to the motion that was brought on a motion to dismiss before the central district. But if we go back and look at what this case was about at the fourth iteration, in the first, second, and third iteration, Metamorphosa alleged that it owned the museum of illusions mark, not the registration, but just plain and simple the museum of illusions mark. Only in the fourth iteration did it drop that allegation, and now for the first time, I argue, well, look, there's a similarity between our design and this three-dimensional. In its first, second, and third iteration, it said your mark museum of 3-D illusions is fine. Why don't you go use that? It didn't mind the geometric solids or figures in that registration. It was saying, why don't you use that because we want to use the name. What's telling is if you look at the prayer for relief in this operative, the one that was dismissed,  and what it says is that it wanted an injunction against the standard boilerplate language with any of the four going from using the designation museum of illusions, the museum of 3-D illusions, or any other mark that contains the phrase museum of illusions or is confusingly similar to plaintiff's registrations. So it's basically the entire time it's been trying to take a shifting stands approach to stop Big Funny from using the mark museum of illusions when it was the first one to have ever used that mark. Thank you. Thank you, Your Honor. Your Honors, counsel made two factual assertions that are pivotal to this appeal that are incorrect. First, counsel said that all that Big Funny has done is use the words museum of illusions. That is not true. As we can see in excerpts of record 32 to 37 of the complaint, it is a composite design mark where the words and the design are integrated together in Big Funny's use. And the PTO rejection recognized this. In fact, at ER pages 61 and 88, Big Funny itself said that the mark it was trying to register, that the claim designation is a combined one. Well, I don't want to take away all your time. Never mind. Go ahead. Your Honor, to the points you raised earlier, the test in similarity of marks is similarity, not identity. We could sit here all day and point out side-by-side differences between the two parties' marks. We can also identify, as we've done in the briefing and done somewhat here, a number of similarities. This Court has said emphasize similarities over dissimilarities and accept the factual allegations of the complaint. What are the strongest similarities? Your Honor, the strongest similarities are, first, the use of the words museum of illusions as part of a composite design mark. What's second? The second thing is that they are both using geometric solids to create an illusionary effect in presenting letters to the consumer. The M in metamorphosis mark, museum of illusions in Big Funny's mark. And then when we get to the other sleep craft factors, which must be considered. I think we have to get to sleep craft. Yes, Your Honor. This Court in Jayda Choi's required it. And when we do that, all that we have to work from is the set of well-pleaded allegations in the complaint. And in our opening brief, pages 32 to 33, we've cited all of the portions of our Second Amendment complaint that support multiple important sleep craft factors in our favor. And, therefore, when the district court goes through that analysis, it's not permitted to find facts on its own. It has to accept that allegation as true. The case had said that if there is no similarity, you don't have to go any further. And then Jayda Choi said, well, that was, in that particular case, dicta. And I had trouble seeing quite why it was dicta or why the older case doesn't remain the law. Right. Maybe with a qualification where the dissimilarity or similarity is just too subjective. Right. So, Your Honor, Jayda Choi's explained why it was that the earlier case was just dicta. It was talking about Brookfield Communications. It could be a policy explanation. Judges may use their subjective feelings rather than an analytic explanation. Right. Your Honor, common sense is certainly allowed under Tromley and Iqbal. But the allegations of the complaint get great deference. What this court in Jayda Choi said as to why the Coke-Pepsi discussion in Brookfield was dicta is that the court in Brookfield did look at other sleep craft factors and found them to point in the same direction. And, here, Your Honor, this is not Coke and Pepsi. Even if you were to treat Brookfield's discussion of that as a holding, this is not Coke versus Pepsi. We have two composite design marks where there are plausible similarities between the two in addition to multiple other sleep craft factors in our favor. It was inappropriate for the district court to violate the sleeper lounge precedent, dissect the marks, ignore the other sleep craft factors, and make its own factional findings on the 12B6 motion. We, therefore, ask this court to vacate the judgment and remand the case to proceed to discovery. So it boils down to whether there are plausible similarities in the way the M is printed. Your Honor, it does not boil down to that because, as this court held in sleeper lounge and as the Federal Circuit has confirmed in giant food and national data, when considering the composite mark, you don't just look at our stylized M. You look at our stylized M together with the words Museum of Illusions. And when you look at Big Funny's mark, you don't just look at the words Museum of Illusions. You look at the composite design that has stylization and geometric solids creating the illusion of these words. Thank you very much, Your Honor. Those are your arguments. We'll stand and recess. All rise. Hear ye, hear ye. A person's having an instance of dishonorable. The United States Court of Appeal for the Ninth Circuit will not depart for this portion of the session. The house stands adjourned.
judges: KLEINFELD, CHRISTEN, BUMATAY